# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 11-CV-02910-RBJ**

**MATTHEW DONACA, an individual and
on behalf of all others similarly situated,**

      **Plaintiff,**

**v.**

**DISH NETWORK, LLC,**

      **Defendant.**

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS REVISED MOTION FOR CLASS CERTIFICATION

---

John W. Barrett
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301

Edward A. Broderick
Anthony Paronich
Broderick Law, P.C.
125 Summer Street, Suite 1030
Boston, MA 02110

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760

Edward M. Allen
Pendleton, Friedberg, Wilson & Hennessey, P.C.
1875 Lawrence St., 10th Floor
Denver, CO 80202-1898

*Counsel for Plaintiff*

# TABLE OF CONTENTS

ARGUMENT SUMMARY……………………………………………………………………..1

FACTS CONCERNING CLASS CERTIFICATION ................................................................. 2

A.   Plaintiff has obtained records that identify hundreds of thousands of call recipients and permit the presentation of class-wide evidence to resolve the claims of all class members.  2

    1.   Call records from Five9 evidence 81,113 live telemarketing calls placed by Dish dealer Satellite Systems Network to individuals on the Do Not Call Registry in 2010 and 2011........................................................................................................................ 3

    2.   Call records and recorded messages from Dynamic Interactive evidence 333,965 prerecorded telemarketing calls placed for Dish dealer Paramount Media Group in February of 2011....................................................................................................... 4

    3.   Call records and recorded messages from NetDotSolutions evidence 299,524 prerecorded calls placed by Dish dealer Satellite Services Utah in January and February 2012. ...................................................................................................... 5

PROPOSED CLASS DEFINITION ........................................................................................ 6

ARGUMENT ......................................................................................................................... 7

A.   The standard for Rule 23(b)(3) class certification. ............................................................ 7

B.   All Rule 23(a) requirements are met.................................................................................. 8

    1.   Numerosity............................................................................................................... 8

    2.   Common questions of law or fact ............................................................................. 8

    3.   Typicality ............................................................................................................... 10

    4.   Adequate representation......................................................................................... 11

C.   The Rule 23(b)(3) requirements of predominance and superiority are met........................ 13

D.   Consent issues pose no barrier to class certification........................................................... 16

CONCLUSION..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Agne v. Papa John's Int'l, Inc.,*
    286 F.R.D. 559 (W.D. Wash. 2012) ................................................................. 18

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) .............................................................................. 14, 15

*Beattie v. CenturyTel, Inc.,*
    511 F.3d 554 (6th Cir. 2007) ........................................................................ 15

*Blair v. Equifax Check Servs.,*
    181 F.3d 832 (7th Cir. 1999) ........................................................................ 14

*Butler v. Sears, Roebuck & Co.,*
    702 F.3d 359 (7th Cir. 2012) ........................................................................ 14

*CE Design Ltd. v. King Architectural Metals, Inc.,*
    271 F.R.D. 595 (N.D. Ill. 2010) .................................................................... 18

*Chisholm v. TranSouth Fin. Corp.,*
    194 F.R.D. 538 (E.D. Va. 2000) .................................................................... 14

*Critchfield Phys. Therapy v. Taranto Group, Inc.,*
    263 P.3d 767 (Kan. 2011) ....................................................................... 17, 18

*DG ex rel. Stricklin v. Devaughn,*
    594 F.3d 1188 (10th Cir. 2010) ................................................................... 8, 11

*Esplin v. Hirschi,*
    402 F.2d 94 (10th Cir. 1968) ......................................................................... 8

*G.M. Sign, Inc. v. Finish Thompson, Inc.,*
    No.  07-cv-5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) .......................................... 18

*Grant v. Capital Management Services, L.P.,*
    449 Fed.Appx. 598 (9th Cir. 2011) .................................................................. 16

*Green v. Service Master,*
    No. 07-cv-4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) ..................................... 17, 18

*Hinman v. M&M Rental Center, Inc.,*
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ........................................................... 17, 18

*In re Farmers Inc. Co. FCRA Litig.*,
  2006 WL 1042450 (W.D. Okla. April 13, 2006) ................................................ 15

*In re Folding Carton Antitrust Litig.*,
  75 F.R.D. 727 (N.D. Ill. 1977) ........................................................................ 16

*In the matter of the Joint Pet. filed by Dish Network*, *LLC*,
  28 F.C.C.R. 6574 (2013) ................................................................................... 2

*J.B. ex rel. Hart v. Valdez*,
  186 F.3d 1280 (10th Cir. 1999) ........................................................................ 8

*Jermyn v. Best Buy Stores, L.P.*,
  256 F.R.D. 418 (S.D. N.Y. 2009) ..................................................................... 15

*Kavu, Inc. v. Omnipak Corp.*,
  246 F.R.D. 642 (W. D. Wash. 2007) ................................................................. 17

*Lake v. First Nationwide Bank*,
  156 F.R.D. 615 (E.D. Pa. 1994) ....................................................................... 16

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
  640 F.3d 72 (3rd Cir. 2011) ............................................................................. 17

*Maez v. Springs Auto. Grp., LLC*,
  268 F.R.D. 391 (D. Colo. 2010) ........................................................................ 8

*Meyer v. Portfolio Recover Assocs., LLC*,
  707 F.3d 1036 (9th Cir. 2012) .......................................................................... 17

*Mussat v. Global Healthcare Res., LLC*,
  No. 11-cv-7035, 2013 WL 1087551 (N.D. Ill. March 13, 2013) ......................... 18

*Reed v. Bowen*,
  849 F.2d 1307 (10th Cir. 1988) ......................................................................... 7

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*,
  281 F.R.D. 327 (E.D. Wis. 2012) ...................................................................... 18

*Rex v. Owens ex rel. State of Okla.*,
  585 F.2d 432 (10th Cir. 1978) ........................................................................... 8

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) ........................................................................ 11

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ........................................................................... 17

*Silbaugh v. Viking Magazine Servs.*,
    278 F.R.D. 389 (N.D. Ohio 2012) .................................................................... 18

*Sparkle Hill, Inc. v. Interstate Mat Corp.*,
    No. 11-cv-10271, 2012 WL 6589258 (D. Mass. Dec. 18, 2012)........................ 15

*Tabor v. Hilti, Inc.*,
    703 F.3d 1206 (10th Cir. 2013) ........................................................................ 7

*United States Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980).......................................................................................... 7

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*,
    No. 1:10-cv-00253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012) ............... 15

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011) ...................................................................................... 11

**ARGUMENT SUMMARY**

For years (and as recounted in Plaintiff's summary judgment opposition), Dish has been on the receiving end of scores of consumer complaints, private lawsuits, and government enforcement actions alleging illegal telemarketing by Dish dealers trying to sell Dish satellite-TV subscriptions. Nonetheless, because neither Dish nor its dealers preserve records of telemarketing calls (despite a longstanding and unenforced corporate policy requiring their preservation[1]), Dish has managed to fend off efforts to impose classwide responsibility for TCPA violations.[2] This allowed Dish to reap the rich financial benefits of the new subscriptions generated by illegal telemarketing, while shielding itself from any responsibility for the illegal telemarketing from which it has benefited.

However, through extraordinary and far-reaching third party discovery efforts, Plaintiff has succeeded where others have failed, and has obtained records of hundreds of thousands of telemarketing calls placed by Dish's dealers. These call records allow the presentation of classwide proof that will allow a jury to determine whether Dish is liable under the TCPA for the calls.  The call records show when the calls were made; who transmitted the calls, and the relationship of those entities to Dish; the subject matter of the calls (including in many instances the actual prerecorded messages transmitted); and

---

[1] (Ex. A, Facts Blast, November 11, 2006; Ex. B, R. Musso Dep., May 1, 2013, at 77-78.)

[2] For example, after counsel in a putative TCPA class action in Washington was unable to obtain records of Dish telemarketing calls, Dish settled the case for no compensation to class members, a $50,000 *cy pres* payment, and a $900,000 payment to the lawyers for the class.  (*See* Ex. C, Counsel Decl. ¶ 4, *Spafford v. EchoStar Communic. Corp.*, No. 2:06-cv-00479 (W.D. Wash.) (describing the process of identifying class members as "ultimately an exercise in futility")).

whether the calls were successfully transmitted to the prospective customer. All of this allows for the resolution of hundreds of thousands of claims, all brought under the same statute, through a single, efficient class action proceeding. Class certification is especially warranted here, where the alleged illegalities arise from the computer-generated, *en masse* distribution of telemarketing communications.

As explained in greater detail below, all applicable Rule 23 criteria are satisfied, and this case can and should be tried as a class action. Through this motion, Plaintiff respectfully requests that this Court join the many trial and appellate courts that have approved class certification as a means to resolve TCPA claims, and allow this case to proceed as a class action so that class members may receive notice of their rights under Rule 23 to remain in the class or exclude themselves and reserve their ability to pursue their own actions.

## FACTS CONCERNING CLASS CERTIFICATION

**A.    Plaintiff has obtained records that identify hundreds of thousands of call recipients and permit the presentation of class-wide evidence to resolve the claims of all class members.**

This case has presented a significant discovery challenge:  all telemarketing calls at issue were dialed by Dish dealers and their subagents, many of whom are defunct and unreachable, or did not maintain (or destroyed) records of the numbers dialed. Such challenges are common in telemarketing cases, and in fact were one contributing factor to the FCC's recent decision allowing the vicarious liability of sellers like Dish for illegal telemarketing by authorized dealers. *In the matter of the Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6588 (2013) ("Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave

consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof [or] unidentifiable. . . . [T]he seller (in this instance) would benefit from undeterred unlawful acts, and the statute's purpose would go unrealized." (internal quotation marks omitted)).

Here, Plaintiff has gone to great lengths to obtain call logs—described below.

**1.      Call records from Five9 evidence 81,113 live telemarketing calls placed by Dish dealer Satellite Systems Network to individuals on the Do Not Call Registry in 2010 and 2011.**

Five9 provides telephone software applications that telemarketers can access by internet to make telemarketing calls.  (Ex. D, T. Maslennikov Dep., March 5, 2013, at 21-22, 27.)  It contracted to provide services to a California Dish retailer called Satellite Systems Network, or SSN. (*Id.* at 32.)  In short, under its agreement with Five9, SSN would upload telephone numbers onto Five9's calling platform, and those numbers would be dialed automatically so SSN's telemarketers could connect with prospective Dish customers.  (*Id.* at 64-65.)

Plaintiff's analysis of Five9's records reveal that two or more calls in a twelve-month period were placed to 81,113 telephone numbers listed on the Do Not Call Registry for at least thirty days, in alleged violation of 47 U.S.C. § 227(c).[3] By using

---

[3] Plaintiff's telemarketing expert, Robert Biggerstaff, and the class action administration/data management firm AB Data, performed this analysis using the following methodology:  (1) Mr. Biggerstaff reviewed Five9 call records showing more than 1.6 million telephone calls, and identified approximately 336,000 separate telephone numbers (Ex. I, R. Biggerstaff Dep., April 4, 2013, at 255-56); (2) of that smaller subset, Mr. Biggerstaff identified just over 271,000 numbers that were dialed more than once (*id.*); (3) AB Data then cross-checked the 271,000 numbers against the numbers listed on the national Do Not Call Registry for at least thirty days at the time the calls were placed, and determined that 81,113 distinct telephone numbers fit that criteria (Ex. J, Aff. of AB Data/Anya Verkhovskaya ¶ 9; Ex. K, March 12, 2013 Report of R. Biggerstaff ¶ 11.)

reverse phone-number lookup databases, Plaintiff can locate names and addresses of a majority of class members (Ex. E, A. Verkhovskaya Dep., May 7, 2013 at 33-34, 69-70).[4]

At its recent deposition, SSN confirmed that the Five9 calls were telemarketing calls promoting Dish subscriptions, and that at the time the calls were placed, SSN was an exclusive Dish dealer.  (Ex. F, Aff. of S. Tehranchi at ¶¶ 9-12; Ex. G, S. Tehranchi Dep., at 19, 27-29.)

> **2.     Call records and recorded messages from Dynamic Interactive evidence 333,965 prerecorded telemarketing calls placed for Dish dealer Paramount Media Group in February of 2011.**

Dynamic Interactive is a California corporation that provides "voice broadcasting" services that allow a telemarketer to log on to a software application, upload pre-recorded messages and telephone numbers, and transmit the messages to those numbers *en masse*, cheaply and quickly.  (Ex. H, D. Bernal Dep., March 6, 2013, at 16, 18, 22, 24, 28-29.)  For each campaign conducted on the Dynamic platform, Dynamic preserves data including the dates of the calls; the number of calls placed; audio files of the pre-recorded messages transmitted; and "disposition codes" that show whether the call was placed to a cell phone, answered by the recipient, or completed but not answered.  (*Id*. at 31-35, 65-68.)

---

[4] Class members who cannot be identified can receive effective notice through publication of a court-approved notice through a court-approved publication plan.  This method was approved in Plaintiff's counsel's very similar case against the security company ADT.  (*See infra pp.* 13-14.)

For example, the Dynamic records show that the following pre-recorded message was successfully transmitted to 12,208 telephone numbers on February 9, 2011 for Dish Dealer Paramount Media Group:

> Hi, this is Lisa with Dish Network, we're calling to schedule installation for your free satellite TV system. This is our third attempt at contacting you. Your free satellite TV offer includes free installation, free DVR equipment, and $100 cash back. This could be your final notice, so press 1 now to schedule installation for your free DISH Network system.

(*Id*. at 37.)  Plaintiff has all the pre-recorded voice messages for the 333,965 Dish telemarketing calls sent through the Dynamic platform.[5]

3. **Call records and recorded messages from NetDotSolutions evidence 299,524 prerecorded calls placed by Dish dealer Satellite Services Utah in January and February 2012.**

Like Five9 and Dynamic, NetDotSolutions ("NDS") is a California software company whose telephone software Dish dealers used to send pre-recorded messages promoting Dish subscriptions. NDS produced (i) a summary of all Dish-related pre-recorded telemarketing campaigns embarked on its system from 2007 through 2012; (ii) the actual recorded messages used in each Dish telemarketing campaign during that period; and (iii) detailed records of more than 299,524 Dish-related telemarketing calls placed using the NDS software in 2012.

The NDS call records also identify the telephone number that any potential customer was transferred to if they responded to the pre-recorded message. Through subpoenas to telephone carriers, the Plaintiff identified a call center that was involved in the transmission of the 299,524 telemarketing calls produced by NDS, Focus Services d/b/a First Call ("Focus Services"). (Ex. M, Subpoena Response identifying Focus

Services.)  At their deposition, Focus Services identified the DISH seller that hired them

to make telephone calls to generate business for DISH, Satellite Services of Utah

("Satellite Services").  Focus Services explained the access Satellite Services granted

them to DISH's internal order provisions systems (Ex. N,  J. Porter Dep., June 19, 2013,

at 49), as well as their process of using pre-recorded messages to generate sales for

DISH. (*Id*. at 83-84.)

## PROPOSED CLASS DEFINITION

Plaintiff proposes certification of the following class:

Persons who received calls promoting DISH goods or services from the
following CID/ANIs, on the following Dates, from or at the direction of
the following Dealers and their affiliates:

| CID/ANI | Date(s) | Dealer |
|---------|---------|--------|
| (702) 520-1152 | November 16, 2007 | Apex Satellite |
| (714) 607-5765 | July 31, 2008 | Marketing Guru |
| (978) 570-2310 | August 19, 2008 | Clear Interactive |
| (978) 570-2310 | September 3, 2008 | Clear Interactive |
| (765) 807-6500 | July 27, 2009 | LA Activations |
| (949) 241-8026 | May 1, 2010-June 30, 2010 | Satellite Systems Network |
| (800) 375-8211 | July 1, 2010- January 31, 2011 | Satellite Systems Network |
| (574) 970-0867 | February 7-9, 2011 | Paramount Media Group |
| (207) 512-2291 | February 9-11 & 14-17, 2011 | Paramount Media Group |
| (516) 224-0069 | February 9, 14, & 16, 2011 | Paramount Media Group |
| (516) 224-0067 | February 17, 2011 | Paramount Media Group |
| (503) 457-1017 | January 16, 2012 | Satellite Services Utah |
| (425) 390-8176 | January 17-18, & 20, 2012 | Satellite Services Utah |
| (425) 336-8350 | January 30-31, 2012 | Satellite Services Utah |
| (503) 457-1009 | Jan. 24-26, 2012 & Feb. 1, 8, & 15, 2012 | Satellite Services Utah |
| (503) 457-1032 | Jan. 30, 2012 & Feb. 15, 2012 | Satellite Services Utah |

To track the allegations in the complaint, Plaintiff proposes two subclasses: (a) a

§ 227(b) robocall subclass (alleged in Count One), consisting of all persons who received

calls by pre-recorded voice message or by automated telephone dialing systems; and (b) a

---

[5] *See* Ex. L, D. Bernal Decl. ¶ 21.

§ 227(c) DNC subclass (Count Two), consisting of all persons whose telephone numbers were listed on the national Do Not Call Registry for at least thirty days, and received more than one call during the class period in a twelve-month span.

## ARGUMENT

**A.      The standard for Rule 23(b)(3) class certification.**

Mr. Donaca seeks certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  Certification under this provision requires that a plaintiff first satisfy all requirements of Rule 23(a), and all requirements of Rule 23(b)(3). *Tabor v. Hilti, Inc.,* 703 F.3d 1206, 1227 (10th Cir. 2013).

The Tenth Circuit has held that "[w]hether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive.  Each case must be decided on its own facts, on the basis of 'practicalities and prudential considerations.'" *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 406 n.11 (1980)). However, class certification does not require a conclusive determination on the merits of the claims; when determining whether to certify a class, a court must take the substantive allegations of the complaint as true. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1197-98 (10th Cir. 2010). Any doubts should be resolved in favor certification. *Maez v. Springs Auto. Grp., LLC*, 268 F.R.D. 391, 393 (D. Colo. 2010) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968)).

**B.     All Rule 23(a) requirements are met.**

**1.     Numerosity**

Rule 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." There is no set formula to determine if a class is so numerous that joinder is impracticable, but "[c]lass actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978). The duty of establishing numerosity "rests with the party who asserts the existence of the class and that party must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Id.*

Numerosity in this case is satisfied. The call records outlined above demonstrate more than 600,000 violative calls placed to class members. Plaintiff does not expect Dish to contest numerosity here.

**2.     Common questions of law or fact**

The Rule 23(a)(2) requirement of commonality requires only a single question of law or fact common to all class members. *J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280, 1288 (10th Cir. 1999). As a leading treatise explains, "Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative—that is, there need be only a single common issue to all members of the class. Therefore, this requirement is easily met in most cases." 1 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 3.01, 3-49-3-50 (3d ed. 1992 & June 2002 supplement).

In an earlier pleading, Dish identified several "fundamental questions" that should be addressed for the case to proceed as a class action. (Def. Opp. Class Cert., ECF No. 150, at 2.)  Those questions, and the manner in which they can be answered for all class members, are addressed below.

**"*Whether the phone calls indicated on the call logs related to Dish services*" is a common question capable of resolution by classwide proof.**

For each call placed to each class member, Plaintiff can present proof that will allow a jury to determine whether the phone calls on the call logs relate to Dish services. The available evidence, detailed more fully *infra* at 3-6, includes:

- Records of calls placed to putative class members through the Dynamic Interactive platform by a subagent of Dish dealer Paramount Media Group, together with the actual pre-recorded messages transmitted, all of which urge the recipient to purchase Dish Network subscriptions.

- Five9 call detail records, together with testimony that the calls in those records were placed by Dish dealer SSN, who at the time exclusively sold Dish subscriptions.

- Pre-recorded messages promoting Dish subscriptions transmitted through the NDS software platform, together with call records that reveal strong links to Dish and Dish dealers with a history of alleged telemarketing violations.

**"*Whether the phone numbers on the call logs represent calls to residential lines, versus calls to cellular or business lines*" is a common question capable of class-wide resolution.**

Through a proprietary database and review by the class action administration firm AB Data, Plaintiff can analyze the Five9, Dynamic, and NDS call records to determine whether the numbers called were residential, cellular, or business lines, and to identify the person and their address who owned the number at the time that the call was made. (Ex. E, A. Verkhovskaya Dep., May 7, 2013, at 33-34, 58-59.) A jury may hear evidence

regarding this analysis, and may accept it and find the Plaintiff has met his burden of proving the nature of the calls made to class members. Or a jury can conclude he has not met his burden of proof. Either way, the question of whether a call was pre-recorded or live can be resolved through common proof.

> **"*Whether the alleged calls to class members were live or pre-recorded*" is a common question capable of class-wide resolution.**

Again, Plaintiff has obtained evidence that will allow a jury to determine whether the calls to class members were live or pre-recorded. Dynamic Interactive and NDS have produced the actual pre-recorded messages they transmitted, and it is frankly difficult to imagine how Dish, faced with this evidence, might contend that the calls were anything other than pre-recorded message calls. Through the testimony of SSN coupled with expert testimony, Plaintiff can confirm the Five9 testimony that records are similarly conclusive, and that establish that the Five9 calls were live telemarketing calls to DNC registrants in violation of § 227(c). (*See* Ex. J, Aff. of AB Data/Anya Verkhovskaya ¶¶ 8-10; Ex. F, Aff. of S. Tehranchi ¶¶ 7-10).

### 3.      Typicality

Rule 23(a)(3) requires that the claim of the class plaintiff must be typical of the claims of class members. "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 n.5 (2011). To satisfy typicality, the claims of the class representative and class members "need not be identical." *DG*, 594 F.3d at 1198. Where

the claims "are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id*. at 1198-99.

Here, Mr. Donaca's claims are typical of those of class members. All claims arise out of the same legal theories, as typicality requires.  Mr. Donaca, like class members, received telemarketing calls soliciting new Dish subscribers via robocall telemarketing that violates the TCPA, as alleged in Count One. Like class members, he received telemarketing calls while his number was listed on the DNC Registry, as alleged in Count Two. Individualized inquiry into the nature of the calls and the degree of intrusion into the affairs of class members is not required to establish the TCPA violation, and therefore is not relevant.

The typicality requirement is met.

### 4.      Adequate representation

Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

Mr. Donaca has no conflicting interests with class members. In fact, by investigating, filing, and vigorously prosecuting this case (marked by an eight-hour deposition by Dish's counsel), he has demonstrated a desire and ability to protect class members' interests. He has elected not to pursue solely his individual claims in this

matter, but instead is standing up for others who, like him, have been subjected to unlawful telemarketing promoting Dish subscriptions.

Just as Mr. Donaca is committed to the prosecution of this case, so too are his lawyers, who request appointment as class counsel. Attached are declarations from Matthew P. McCue, Edward A. Broderick, and John W. Barrett (*see* Exs. O through Q) that address the factors the Court "must consider" in determining the appointment of class counsel. *See* Fed. R. Civ. P. 23(g) These factors include "the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of applicable law; and the resources that counsel will commit to representing the class." *Id*. Additionally, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id*.

As stated in the declarations, these three lawyers have more than twenty-five years of experience litigating TCPA class actions in state and federal courts, and have obtained significant TCPA class action settlements that reviewing courts have approved as fair and adequate. They have worked to defeat Dish's motion for summary judgment, to obtain and review several hundred thousand pages of critical discovery documents, and to conduct extensive third-party discovery regarding call records.

But perhaps the most relevant testament to counsel's qualification is their successful pursuit of very similar claims in a class action against the security company ADT. Like the Dish/Dish-dealer relationships in this case, ADT's authorized dealers used allegedly illegal telemarketing to promote the sale of ADT security systems. (Ex. O,

McCue Decl. ¶ 8(i)). And like this case, the key challenge was finding call records, which class counsel obtained through extensive third-party discovery efforts. (*Id.*) After those records were obtained, ADT agreed to settle the case for $15 million, plus business practice reforms. (*Id.*) Court-approved notice was mailed to all class members identified through the call detail records, and notice was supplemented by publication and internet notice. Ultimately, the settlement paid close to $50 to class members who submitted claims, and the presiding judge approved the settlement as fair and reasonable. (*Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-1925 (N.D. Ill.), ECF No. 243.). The ADT case provided a potential roadmap for the prosecution and resolution of this case.

Plaintiff respectfully submits the Rule 23(a)(4) adequacy requirement is satisfied.

**C.      The Rule 23(b)(3) requirements of predominance and superiority are met.**

A court may grant class certification under Rule 23(b)(3) if an action meets all Rule 23(a) requirements and, in addition, "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3) (emphasis added). Matters pertinent to those findings include:  (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Id.*; *see generally Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997).

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. at 623. Broadly speaking, predominance "is a question of efficiency. Is it more efficient, in terms both of economy of judicial resources and of the expense of litigation to the parties, to decide some issues on a class basis or all issues in separate trials?" *Butler v. Sears, Roebuck & Co*., 702 F.3d 359, 362 (7th Cir. 2012) (internal citations omitted).

Several considerations combine to satisfy Rule 23(b)(3) here. *First,* all claims arise under the same federal statute, all involve the same elements of proof, and all involve the same alleged misconduct—telemarketing in violation of the robocall provisions of § 227(b), and telemarketing to persons listed on the federal DNC Registry in violation of § 227(c).

*Second*, because class member damages are fixed by statute at $500 to $1,500 per violation, the calculation of class damages is greatly simplified, and requires no individualized inquiries. Actions for fixed statutory damages are particularly appropriate for class certification. *See, e.g., Blair v. Equifax Check Servs.,* 181 F.3d 832, 836 (7th Cir. 1999); *Chisholm v. TranSouth Fin. Corp.,* 194 F.R.D. 538, 568 (E.D. Va. 2000) (where, as here, each class member was entitled to minimum statutory damages regardless of finding of actual injury, "the calculation of the statutory minimum damages can be achieved with minimal impact on the Court's workload and while preserving the rights of the parties").

*Third*, the small recovery available through individual actions  mmeans it is not economically viable for class members to pursue claims against Dish on an individual

basis. This consideration is particularly compelling here.  As the Supreme Court has

stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem,* 521 U.S. at 609 (internal quotation marks omitted).  Many decisions recognize

the benefits of class certification in cases involving small individual recoveries, in the

context of consumer cases generally,[6] and TCPA cases in particular.[7] The overriding

justification for certification of these claims is compelling, and applies with equal force

here:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit.  This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied.

*In re Folding Carton Antitrust Litig*., 75 F.R.D. 727, 732 (N.D. Ill. 1977); *see also Lake*

*v. First Nationwide Bank*, 156 F.R.D. 615, 626 (E.D. Pa. 1994) ("The public interest in

---

[6]  *See, e.g., Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 567 (6th Cir. 2007) ("Such a small possible recovery [of approximately $125] would not encourage individuals to bring suit, thereby making a class action a superior mechanism for adjudicating this dispute."), *cert denied,* 129 S. Ct. 608 (2008); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D. N.Y. 2009); *In re Farmers Inc. Co. FCRA Litig*., 2006 WL 1042450, *11 (W.D. Okla. April 13, 2006).

[7]  *See* cases discussed *infra* at 16-18*; see also Van Sweden Jewelers, Inc. v. 101 VT, Inc*., No. 1:10-cv-00253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012); *Sparkle Hill, Inc. v. Interstate Mat Corp.*, No. 11-cv-10271, 2012 WL 6589258 (D. Mass. Dec. 18, 2012).

seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.").[8]

For all these reasons, common issues predominate, and the class action device is the superior means of resolving this case.

**D.     Consent issues pose no barrier to class certification.**

Dish will contend that individualized issues regarding a consumer's consent to receive telemarketing calls (*see* 47 U.S.C. § 227(b)(1)(A) and 47 C.F.R. § 64.1200(f)(5)) preclude certification of Plaintiff's robocall telemarketing claims. This argument has no merit here.

Consent issues in this case are a red herring. Prior express consent is an affirmative defense that the ***defendant*** must prove, *see Grant v. Capital Management Services, L.P.,* 449 Fed.Appx. 598, 600 (9th Cir. 2011), through documented evidence of clear and unmistakably stated consent from the call recipient, *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 955 (9th Cir. 2009). But Dish has presented **no evidence** that any putative class member provided valid prior express consent to receive

---

[8] Regarding "the extent and nature of any litigation concerning the controversy already begun by or against class members," Fed. R. Civ. P. 23(b)(3)(B), Dish is best positioned to provide relevant information regarding individual actions. Plaintiff is aware of two putative class actions against Dish that allege TCPA violations. The first was filed in this District on July 26, 2012, almost eight months after Plaintiff filed this action.  *See Warnick v. Dish Network, L.L.C.,* No. 12-CV-01952 (D. Colo.). The plaintiff in that case asserts telemarketing claims for violations of the TCPA, but limits the proposed class to consumers who were contacted on their cell phones via auto-dialer. The second TCPA action was commenced in September 2012 in the Eastern District of California. *See Iniguez v. Dish Network, L.L.C.,* No. 2:12-cv-02354 (E.D. Cal.)  The proposed class in *Iniguez* is limited to consumers contacted who received debt collection calls from Dish on their cell phones via auto-dialer or pre-recorded voice message and who did not consent to receive such calls. No substantive proceedings have occurred in *Iniguez* other than the filing of the complaint, an answer, and a motion to amend the complaint.

telemarketing calls from Dish dealers. Dish cannot rest on speculation about consent to insulate itself from the potential for classwide liability for TCPA violations. If the mere *possibility* of consent could defeat certification, no TCPA case could ever be certified. *See, e.g., Green v. Service Master,* No. 07-cv-4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) (denial of class certification based on the possibility of consent "would wipe away the ability to bring a class action under the TCPA in which a defendant might raise the issue of plaintiffs' consent."); *Landsman & Funk PC v. Skinder-Strauss Assocs.,* 640 F.3d 72, 95 (3rd Cir. 2011) ("The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification.") (quoting *Hinman v. M&M Rental Center, Inc.,* 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008)); *Meyer v. Portfolio Recover Assocs., LLC,* 707 F.3d 1036, 1042 (9th Cir. 2012) (affirming certification of TCPA robocall case where the defendant "did not show a single instance where express consent was given before the call was placed.")

Even if Dish *had* evidence of valid consent, a class still could be certified. Whether any consent was valid is a common question that can be resolved through common proof. *Critchfield Phys. Therapy v. Taranto Group, Inc*., 263 P.3d 767, 778 (Kan. 2011); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642, 647 (W. D. Wash. 2007). And if at some point individual consent issues arise and overwhelm the issues common to class members, a court can consider decertification. *Critchfield,* 263 P.3d at 778.

In light of the above, a solid majority of trial and appellate courts have concluded that issues of prior express consent—real or imagined—present no barrier to certification of TCPA claims. *See id.* at 777-79 (affirming trial court's class certification over defendant's objections regarding consent); *Mussat v. Global Healthcare Res.*, *LLC,* No.

17

11-cv-7035, 2013 WL 1087551, at *6-7 (N.D. Ill. March 13, 2013) (granting class certification over a defendant's objections regarding consent); *Agne v. Papa John's Int'l, Inc.,* 286 F.R.D. 559, 567-68, 570 (W.D. Wash. 2012) (same); *Hinman,* 545 F. Supp. 2d at 806-807 (same); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc*., 281 F.R.D. 327, 338 (E.D. Wis. 2012) (same); *Silbaugh v. Viking Magazine Servs*., 278 F.R.D. 389, 392-93 (N.D. Ohio 2012) (same); *Green,* 2009 WL 1810769, *2 (same); *CE Design Ltd. v. King Architectural Metals, Inc.,* 271 F.R.D. 595, 600 (N.D. Ill. 2010) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.,* No.  07-cv-5953, 2009 WL 2581324, at *5-6 (N.D. Ill. Aug. 20, 2009) (same).

These decisions are well reasoned, and give force and effect both to the efficiency and fairness purposes of Rule 23, and the consumer protection purposes of the TCPA.

## CONCLUSION

For these reasons, Plaintiff respectfully requests the Court grant his motion.

<div style="margin-left:50%">

Plaintiff Matthew Donaca,
By his attorneys.

</div>

*/s/ John W. Barrett*
John W. Barrett
Bailey & Glasser, LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
(304) 342-1110 *facsimile*
jbarrett@baileyglasser.com

Edward M. Allen
Pendleton, Friedberg, Wilson & Hennessey, P.C.
1875 Lawrence St., 10th Floor
Denver, CO 80202-1898
(303) 839-1204
(303) 831-0786 *facsimile*
eallen@penberg.com

Edward A. Broderick
Broderick Law, P.C.
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 738-7080
(617) 951-3954 *facsimile*
ted@broderick-law.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mccue@massattorneys.net

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 11-cv-02910**

**MATTHEW DONACA, an individual and
on behalf of all others similarly situated,**

      **Plaintiff,**

**v.**

**DISH NETWORK,  LLC,**

      **Defendant.**

_____

### Certificate of Service

_____

    I certify that **PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS REVISED MOTION FOR CLASS CERTIFICATION** was filed on September 13, 2013 through the Court's electronic case filing system, and that service will be effected through that system upon the following counsel:

Eric L. Zalud
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, OH 44114

Todd E. Mackintosh
Wood, Ris & Hames, PC
17775 Sherman, Suite 1600
Denver, CO 80203

Benjamin E. Kern
Law Office of Benjamin E. Kern LLC
5327 Westpointe Plaza Drive, PMB 207
Columbus, OH 43228

*/s/John W. Barrett*_____
John W. Barrett