IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-02910-RBJ-KLM

MATTHEW DONACA, an individual and on behalf of all others similarly situated,

      Plaintiff,

v.

DISH NETWORK, LLC.,

      Defendant.

---

# ORDER

---

      The case is before the Court on Dish Network, LLC's motion for summary judgment; plaintiff's revised motion for class certification; and Dish's motion to strike certain arguments and exhibits in plaintiff's reply in support of his revised motion for class certification.  For the reasons discussed herein, Dish's motion for summary judgment is granted in part and denied in part.  The other two motions are denied.

## FACTUAL BACKGROUND AND CASE HISTORY

      Many of us have at one time or another been annoyed by unsolicited telemarketing calls.  In 1991, finding that such calls were a common nuisance and an unreasonable intrusion on citizens' privacy, Congress enacted the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227.  One significant provision of the TCPA made it unlawful for any person to "initiate" a telephone call to any residential telephone line using an artificial or prerecorded voice, also known as a robocall, without the prior express consent of the called party.  47 U.S.C. § 227(b)(1)(B).  The statute created a private right of action for injunctive and monetary relief.  A successful plaintiff can recover his "actual monetary loss" or $500, whichever is greater, for

each violation, and the court can increase the award up to three times if it finds that the violation was willful or knowing. 47 U.S.C. § 227(b)(3).

The TCPA also directed the Federal Communications Commission to initiate a rulemaking proceeding which resulted, among other things, in a rule that no person may "initiate" a telephone solicitation to a residential telephone subscriber who has put his or her telephone number on a national do-not-call registry. 47 C.F.R. § 64.1200(c)(2). As with the prerecorded calls, the TCPA created a private right of action for injunctive relief and damages for persons who violate that regulation. Specifically, a person on the do-not call list who has received more than one unsolicited call within a 12-month period by or "on behalf of" the same entity, and as to which certain exceptions do not apply, may recover his actual damages or $500 in statutory damages, whichever is greater. 47 U.S.C. § 227(c)(5).

I suspect that most persons who have received unsolicited telemarketing calls in the wake of the statute and the FCC rules have little knowledge of the private right of action and, in any event, have done nothing other than express their frustrations to family members or friends. Mathew Donaca is not such a person. He has made it his business, literally, to fight back. According to his deposition testimony [ECF No. 149-7], he considers himself to be a consumer rights advocate. He does regular research on telemarketers. He estimates that in 2011 he derived approximately 60% of his income from TCPA-related activity, meaning collecting money through settlements of claims he made against violators. *Id.* at 10, 12-13, 36-38, 82. He belongs to an email group of consumer rights advocates, many of whom deal in telemarketing, and through which he met his lead counsel in this case. *Id.* at 86-89.

In the present case Mr. Donaca is aggrieved by nine calls he received between November 16, 2007 and March 25, 2009 marketing Dish's goods and services.[1] Mr. Donaca initially proposed to represent a class of "all persons or entities within the United States who Dish either directly, or through its retailers or authorized agents, sent, or caused to be sent, unsolicited telemarketing calls promoting Dish's goods or services, at any time within the four years prior to the filing of the instant complaint."  Complaint [ECF No. 1] at ¶66; First Amended Complaint [ECF No. 24] at ¶57.

Although in one or two cases the source of the challenged calls to Mr. Donaca was not clear, his complaint focused not on calls made directly by Dish but on calls made either by Dish retailers or by telemarketers retained by Dish retailers.  Dish contends that it cannot be said to have "initiated" calls that it did not physically make, and that it has no vicarious liability for calls initiated by others.  Complicating the second question was the fact that section 227(c)(5) of the TCPA, concerning violations of the do-not-call registry regulation, authorized suits based on calls "by or on behalf of" the same entity, whereas section 227(b)(3), authorizing suits based upon unsolicited prerecorded calls, did not have the "on behalf of" language.

When this case was filed Dish had already raised the "initiate" and "on behalf of" issues in two other cases, and in both cases the courts had referred the issues to the Federal Communication Commission for its interpretation of the TCPA and the FCC's regulations applicable to the issues.  *Charvat v. EchoStar Satellite, LLC,* 630 F.3d 459, 465-68 (6th Cir. 2010); *United States v. Dish Network, L.L.C.,* No. 09-3073, 2011 WL 475067, at *4 (C.D. Ill. Feb. 4, 2011.  Dish asked this Court either to dismiss this case without prejudice or to stay the

---

[1] In his initial complaint Mr. Donaca identified 16 unsolicited calls dating back to January 13, 2006. Because of the statute's four-year statute of limitations, the list was reduced to nine calls in his First Amended Complaint: (1) November 16, 2007; (2) July 30, 2008; (3) July 31, 2008; (4) August 8, 2008; (5) August 19, 2008; (6) September 3, 2008; (7) March 20, 2009; (8) March 24, 2009; and (9) March 25, 2009).

case pending the FCC's resolution of those issues.  [ECF No. 14, 15].  The Court for the most

part denied the motion [ECF No. 47], but as a practical matter the case was stayed to the extent

that various deadlines have been changed and the trial date has been continued twice.

On January 31, 2013 plaintiff filed its first motion for class certification.  [ECF No. 102].

He asked the Court to certify a class "consisting of all persons or entities within the United States

who received unsolicited telemarketing calls promoting Dish goods or services, at any time on or

after November 8, 2007, the date four years before Mr. Donaca commenced this action."  *Id.*

Dish's response was filed on May 8, 2013.  [ECF No. 150].

On the day after Dish's response was filed, the FCC released its long-awaited ruling on

the interpretation of the terms "initiate" and "on behalf of."  The FCC ruling was released on

May 9, 2013.  *In re Matter of the Joint Petition Filed by Dish Network, LLC,* CG Docket No. 11-

50, FCC 13-54, 2013 WL 1934349 (May 9, 2013).  The Commission's construction of the term

"initiate" sustained Dish's position that calls are initiated only by the person who physically

places the call:

> We conclude that a person or entity "initiates" a telephone call when it takes the
> steps necessary to physically place a telephone call, and generally does not
> include person or entities, such as third-party retailers, that might merely have
> some role, however minor, in the causal chain that results in the making of a
> telephone call.

*Id.* at **8.

However, the Commission made it clear, contrary to Dish's position, that a seller of

goods and services such as Dish can be held vicariously liable for unlawful prerecorded calls and

live calls under federal common law agency principles, including classical agency (where a

principal manifests assent that an agent shall act on the principal's behalf and subject to the

principal's control); apparent authority (where the principal is accountable for the results of a

third-party's belief about the actor's authority to act as an agent when the belief is reasonable and

traceable to a manifestation of the principal); and ratification (such as when the principal

knowingly accepts the benefits of the actor's conduct).  *Id.* at **11.  The Commission explained:

> We thus agree that, consistent with the statute's consumer protection goals,
> potential seller liability will give the seller appropriate incentives to ensure that
> their telemarketers comply with our rules.  By contrast, allowing the seller to
> avoid potential liability by outsourcing its telemarketing activities to unsupervised
> third parties would leave consumers in many cases without an effective remedy
> for telemarketing intrusions.

*Id* at **12.

> We clarify that, while a seller does not generally initiate calls made through a
> third-party telemarketer, it nonetheless may be vicariously liable under federal
> common law agency-related principles for violations of either section 227(b) or
> 227(c) committed by telemarketers that initiate calls to market its products or
> services.

*Id.* at **15.

As I said, Dish filed its response to plaintiff's motion for class certification on the day

before the FCC ruling came down.  Dish argued, among other things, that plaintiff's proposed

class definition was overbroad.  In plaintiff's reply [ECF No. 160], filed May 28, 2013, he

narrowed his class definition to correspond with call detail records his counsel had obtained in

discovery, specifically to three "calling platforms," essentially meaning a company that has

software for placing telemarketing calls.  An entity can contract with a calling platform to place

such calls on a mass scale.  Mr. Donaca now proposed a class defined as "all persons or entities

who received Dish telemarketing calls through the Five9, Dynamic Interactive, and NDS calling

platforms, at any time on or after November 8, 2007."  *Id* at 11. [2]  He also proposed that the class

---

[2] Both parties start their page numbering several pages into their briefs (having used small Roman
numerals to that point) so that their page numbers are different than the ECF page numbers.  I will use the
ECF numbers.

be divided into two sub-classes, one for prerecorded calls and the other for live calls to persons on the do-not-call registry.  *Id.*

The problem was, as Dish leapt to point out, Mr. Donaca was not a member of the proposed class.  Perhaps a bit red in the face, plaintiffs just a few days before the scheduled certification hearing filed a motion for leave to modify his proposed definition of the class again. [ECF No. 205].  This time the proposal was a class consisting of "[p]ersons who received calls promoting DISH goods or services from the following CID/ANIs, on the following Dates, from or at the direction of the following Dealers and their affiliates: [there followed a chart in which 16 telephone numbers were matched with dates ranging from November 16, 2007 to February 15, 2012 and also matched to a list of seven dealers.[3]  *Id.* at 2.  Plaintiffs continued to suggest the two subclasses (prerecorded and live calls).  *Id.* at 3.

The Court held a hearing on the motion for class certification on July 11, 2013.  The upshot was that the Court denied certification of the class proposed in plaintiff's reply brief (of which Mr. Donaca was not a member) but, at the parties' request, granted the plaintiff leave to file a new motion for class certification.  The Court set a new briefing schedule, vacated the then existing trial date, and set a new trial date (April 7, 2014).  [ECF No. 208, 212].

Plaintiff's "revised motion for class certification" was filed on September 13, 2013. [ECF No. 221].  This is the class certification motion that is presently pending.  It has been fully briefed, and even the briefing generated is own motion, i.e., Dish's motion to strike certain arguments and exhibits in plaintiff's reply brief.  [ECF No. 253].  The Court held a hearing on the motion to certify a class on December 12, 2013 and then took the motion under advisement in order to prepare a written order.

---

[3] Instead of "dealer" Dish uses the term "independent retailer," which is the terminology used in many of Dish's contracts.  The plaintiff tends to prefer the term "dealer."  I will use "dealer" without intending to comment on their independence from Dish one way or the other.

6

The currently proposed class has the same definition as that proposed by plaintiff shortly before the first certification hearing.  It is comprised of

> Persons who received calls promoting DISH goods or services from the following CID/ANIs, on the following Dates, from or at the direction of the following Dealers and their affiliates:

| CID/ANI | Date(s) | Dealer |
|---------|---------|--------|
| (702) 520-1152 | November 16, 2007 | Apex Satellite |
| (714) 607-5765 | July 31, 2008 | Marketing Guru |
| (978) 570-2310 | August 19, 2008 | Clear Interactive |
| (978) 570-2310 | September 3, 2008 | Clear Interactive |
| (765) 807-6500 | July 27, 2009 | LA Activations |
| (949) 241-8026 | May 1, 2010-June 30, 2010 | Satellite Systems Network |
| (800) 375-8211 | July 1, 2010- January 31, 2011 | Satellite Systems Network |
| (574) 970-0867 | February 7-9, 2011 | Paramount Media Group |
| (207) 512-2291 | February 9-11 & 14-17, 2011 | Paramount Media Group |
| (516) 224-0069 | February 9, 14, & 16, 2011 | Paramount Media Group |
| (516) 224-0067 | February 17, 2011 | Paramount Media Group |
| (503) 457-1017 | January 16, 2012 | Satellite Services Utah |
| (425) 390-8176 | January 17-18, & 20, 2012 | Satellite Services Utah |
| (425) 336-8350 | January 30-31, 2012 | Satellite Services Utah |
| (503) 457-1032 | Jan. 30, 2012 & Feb. 15, 2012 | Satellite Services Utah |

Plaintiffs again suggest that the class be divided into two subclasses, one consisting of prerecorded calls and the other consisting of live calls to persons on the do-not-call registry.

Although the class certification issue was occupying center stage, Dish also filed a motion for summary judgment.  [ECF No. 172].  That motion has also been fully briefed, with the most recent edition being Dish's notice of supplemental authority filed on January 23, 2014. [ECF No. 261].

## ANALYSIS

## I.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 172].

There is no need to belabor this one.  I agree with the FCC's interpretation of the terms "initiate" and "on behalf of."  I agree with Dish that plaintiffs have not come forward with any evidence that Dish initiated any of the nine calls to Mr. Donaca that are the subjects of this case.

I also agree with Dish that plaintiffs have not come forward with any evidence that might link calls two (7/30/08), four (8/8/08), seven (3/20/09), eight (3/24/09) or nine (3/25/09) to Dish, to an authorized Dish retailer, or to anyone else whose acts arguably would trigger the vicarious liability of Dish for those calls. The Court grants summary judgment in favor of Dish and against Mr. Donaca with respect to those calls.

However, plaintiffs have come forward with evidence that, if believed, could trigger Dish's vicarious liability under federal common law agency principles for calls one (11/16/07), three (7/31/08), five (8/19/08) and six (9/3/08). Accordingly, summary judgment is denied with respect to those calls. These four calls also coincide with the first four lines in the chart reflecting plaintiff's proposed class *supra*.

## II.  PLAINTIFF'S REVISED MOTION FOR CLASS CERTIFICATION [ECF No. 221].

The plaintiff bears the burden of showing that class certification complies with Fed. R. Civ. P. 23. *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.,* 725 F.3d 1213, 1218 (10th Cir. 2013). Plaintiff must prove that all requirements of Rule 23(a) and at least one requirement of Rule 23(b) are met. *Tabor v. Hilti, Inc.,* 703 F.3d 1206, 1228-30 (10th Cir. 2013). For the reasons that follow I find that Mr. Donaca has not met his burden.

### A.  Mr. Donaca is Not a Member of the Class.

Even before one gets to the four subparts of Rule 23(a), it must be shown that the class representative is a member of the proposed class. Fed. R. Civ. R. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all members…."). In my view, he is not.

As discussed above, the Court denied plaintiff's previous certification motion because Mr. Donaca was not a member of the proposed class. At that time the proposed class was

defined according to three calling platforms: the NetDotSolutions calling platform used by Dish dealers LA Activations on one specific day in 2009 and by alleged Dish dealer Satellite Services Utah ("SSU") on certain dates in 2012; the Five9 platform used by Dish dealer Satellite Systems Network on certain dates in 2010 and 2011; the Dynamic Interactive calling platform used by Dish dealer Paramount Media on certain dates in 2011.  Mr. Donaca did not receive telemarketing calls from any these dealers or platforms, i.e., he was not a member of the proposed class.  The Court denied class certification on that basis.  During the oral argument on the pending motion plaintiff's counsel again acknowledged that Mr. Donaca's not having been a member of that proposed class was a problem.

Plaintiff has attempted to solve the problem by expanding the class definition to include four calling platforms used by three dealers from whom Mr. Donaca did receive calls between November 17, 2007 and September 3, 2008: Apex Satellite (the authorized Dish dealer which placed Donaca call number one); Marketing Guru (the authorized Dish dealer which placed Donaca call number three); and Clear Interactive (the authorized Dish dealer which placed Donaca calls numbers five and six).  However, despite his counsel's best efforts, plaintiff has been unable to identify any individual or phone number that received a telemarketing call from those platforms or dealers on those dates other than Mr. Donaca himself.  Apparently any records that could have identified such persons or calls have been lost or destroyed.

The problem this creates is that "[a]lthough the identity of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable." MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21,222 (2004).  "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Id.*  Ascertainability requires that "[t]he method of determining whether someone is in the class must be administratively

feasible" and must not depend on "individualized fact-finding or mini-trials." *Carrera v. Bayer Corp.,* 727 F.3d 300, 307 (3d Cir. 2013) (citation omitted).  In short, because members in a class of individuals who received calls on the dates and from the dealers who called Mr. Donaca cannot be ascertained, then a class comprising such individuals cannot be certified.

Plaintiff suggests that this problem can be solved through notice by publication.  Because the statutory penalty in a prerecorded call case is $500 per call and up to $1,500 if the violation was willful or knowing plaintiff believes that some people might come forward in response to such a notice.  But one must wonder how anyone (other than Mr. Donaca) could establish in 2014 that, for example, he or she received a prerecorded call from the phone number 720-520-1152 on November 16, 2007.  During oral argument plaintiff's counsel conceded that it is very unlikely that people who received the same calls that Mr. Donaca received would have any evidence of that.  At a minimum authentication of the bona fides of any responder to a publication notice would require individual investigation and fact-finding.  For all practical purposes, therefore, such a class is not ascertainable.  *Carrera,* 727 F.3d at 307.[4]

Plaintiff also argues that destruction of records to avoid suit should not be rewarded.  It is hard to disagree with that proposition in the abstract.  However, even if that type of scurrilous conduct occurred (and plaintiff has produced no evidence even arguably linking Dish to destruction of records) it would not solve the ascertainability problem.

---

[4] Plaintiff's authority for notice by publication, *Lucas v. Kmart Corp.,* 234 F.R.D. 688 (D. Colo. 2006) is not helpful.  The court certified a class of individuals who use wheelchairs or scooters and shop at Kmart stores.  The parties then reached a settlement involving injunctive and monetary relief.  The parties jointly asked the court to certify a damages sub-class and jointly asked the court to permit them to supplement individual notices with a notice program including publication in nationwide publications, publications targeted to individuals who use wheelchairs or scooters, notice to organizations that focus on people with disabilities, and posting notices in all Kmart stores and on the Kmart website.  *Id.* at 695-96.  That is not comparable to what plaintiffs suggest here.

So, the "class" of individuals who have received a prerecorded call from those platforms is a class of one person. In effect, plaintiff has responded to the Court's dismissal of his previously defined class by presenting the same class again but trying to tack Mr. Donaca onto it. I am not persuaded. He is still not a member of the ascertainable class. I do not question Mr. Donaca's zeal or the ability and experience of his team of lawyers. But the fact that he received four prerecorded calls from different dealers in different years is incidental to the fact that, in reality, he wishes to represent a group of people of which he is not a member. During argument plaintiff's counsel conceded that Mr. Donaca could not assert claims against dealers who did not call him. If so, then one must question how he can assert Dish's vicarious liability for calls made by dealers who did not call him. He could just as easily be a concerned citizen who, despite never having received a call from any Dish dealer, simply wants to vindicate the rights of those who did.

### B.  Even if Mr. Donaca were Deemed to be a Member of the Class, Rule 23's Requirements Are Not Fully Satisfied.

If one assumes, contrary to my previous finding, that Mr. Donaca can be deemed a member of the proposed class, there still are problems with his proposed class. The four groups of people he wishes to represent per his chart *supra* (that is, the groups other than the unascertainable group called by the three dealers who called Mr. Donaca who are represented by the first four lines of the chart) were called by (1) LA Activations; (2) Satellite Systems Network; (3) Satellite Services Utah; and (4) Paramount Media Group. I look at those four groups in turn.

#### 1. Persons Called by LA Activations.

Plaintiff wishes to represent persons called by Dish dealer LA Activations through the NetDotSolutions calling platform on July 27, 2009. In his brief in support of class certification,

however, he does not discuss or provide any evidence concerning the makeup, size or ascertainability of this group.  *See* Plaintiff's Memorandum in Support of His Revised Motion for Class Certification [ECF No. 222] at 8-11.  Dish's response noted this and had little more to say about LA Activations.  *See* Response [ECF No. 239] at 13.

In his reply brief [ECF No. 250], however, plaintiff asserts that "NetDotSolutions/LA Activations" placed 100,000-plus prerecorded calls promoting Dish, and that NetDotSolutions/LA Activations' records include the (765) 807-6500 number and date July 27, 2009 which is included in plaintiff's proposed class.  *Id.* at 11.  Plaintiff cites deposition excerpts from Reji Musso of Dish [ECF No. 250-6] and Jamie Christiano of NetDotSolutions [ECF No. 250-10]; 250-7]; an affidavit of Mr. Christiano [ECF No.250-7]; and a spreadsheet [ECF No. 250-8].  Plaintiff argues that a jury reasonably could either conclude from this evidence either that LA Activations placed calls to sell Dish subscriptions or that the jury could resolve the issue in Dish's favor.  [ECF No. 248 at 19-20].

Dish moved to strike this "new" information concerning LA Activations, claiming that it was left with no opportunity to reply.  [ECF No. 253 at 8-9].  Dish has a point, although it could have requested leave to file a surreply, and it was given (and accepted) the opportunity to present additional evidence at the hearing.  Besides, quite frankly, I want to know what evidence plaintiff has concerning the LA Activations group to help me do my job.

Therefore, despite Dish's objection, I have read and reread the evidence concerning LA Activations that is cited and discussed in plaintiff's reply.  From this information I can make certain findings.  LA Activations was at one time a Dish dealer.  LA Activations used prerecorded calls.  The prerecorded calls included calls pitching Dish products or services.  Dish received complaints about calls received from the calling number (765) 807-6500 on various

dates in July 2009, including two calls received on July 27, 2009.  NetDotSolutions records show

that between 2008 and 2012 one or more persons utilizing NetDotSolutions software

implemented telephone campaigns using one or more prerecorded messages that contained either

the term "dish" or the term "satellite." Approximately 100,000 calls were made by the number

(765) 807-6500 on July 27, 2009 promoting something.

What this evidence does not do, however, is establish that there is an ascertainable group

of individuals who received prerecorded calls from LA Activations pitching Dish on July 27,

2009.  The LA Activations "group" perhaps comes the closest to a class that could be certified of

the several groups comprising the proposed class (if Mr. Donaca had been a member, which he is

not).  But even as to this group plaintiff falls short of meeting its burden of proof.

### 2. Persons Called by Satellite Systems Network.

Mr. Donaca has developed evidence that two or more calls were placed to 81,113

telephone numbers by Dish dealer Satellite Systems Network through the Five9 calling platform

using two calling numbers between May 1 and June 30, 2010 and between July 1, 2010 and

January 31, 2011.  These were live calls to persons on the do-not-call registry.  *See* Plaintiff's

Memorandum [ECF No. 224] at 8.  Such calls potentially violate 47 U.S.C. § 227(c) and FCC

regulations under that statute.  Mr. Donaca is listed on the national do-not call registry, and three

of the original nine calls listed in his Amended Complaint were live calls.  However, I have

granted summary judgment dismissing his claims as to those calls.  The calls that survived

summary judgment were prerecorded calls, allegedly in violation of 47 U.S.C. § 227(b)(1)(B).

Rule 23(a)(3) requires that plaintiff's claims be typical of the claims of the class.

"[T]ypicality exists where . . . all class members are at risk of being subjected to the same

harmful practices, regardless of any class member's individual circumstances."  *D.G. ex rel.*

*Stricklin v. Devaughn,* 594 F.3d 1188, 1199 (10th Cir. 2010).  Persons who received unsolicited

live calls despite being listed on the registry suffered a different harmful practice, violating a

different set of rules, than those who received prerecorded calls.  Accordingly, I do not find that

Mr. Donaca's claims are typical of the claims of the persons called by Satellite Systems

Network.

### 3.  Persons Called by Satellite Services Utah.

According to plaintiff, 299,524 prerecorded calls were placed by Satellite Services Utah

through the NetDotSolutions calling platform using five different calling numbers on January 16-

18, 24-26, and 30-31, 2012 and February 1, 8 and 15, 2012.  The calls were actually placed by a

vendor, "Focus Services," engaged by Satellite Services Utah.  Dish has presented evidence that

Satellite Services Utah is not and has never been a Dish dealer.  Affidavit of Bruce M. Werner,

Program Manager for the Audit, Risk and Compliance Group of Dish Network, L.L.C. [ECF No.

238-2] ¶9.  Likewise, Mr. Werner states that Dish has never had a relationship with Focus

Services.  *Id.*  Plaintiffs have not produced any evidence suggesting otherwise or that Satellite

Services Utah or Focus Services has had any other connection to Dish.[5]

One could argue that this goes to the merits rather than the class certification issue, but it

is not always possible to separate the two.  *See, e.g., Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct.

2541, 2545 (2011).  Since the target of Mr. Donaca's case is prerecorded calls placed on behalf

of Dish, I cannot find that Mr. Donaca is typical of persons who received calls from an entity for

which Dish has no apparent vicarious liability under any agency theory.

---

[5] During oral argument I asked Dish's counsel how Satellite Services Utah or Focus Services could
attempt to sell Dish products or services if they had no relationship to Dish.  Counsel's explanation was
that such entities, which he described as a "scourge" for Dish, might make the calls to generate leads
which they could then bundle and sell to a legitimate retailer or to another lead generator.  Whether or not
that is what Satellite Services Utah and Focus Services were doing, the fact remains on the record
presented to this Court that Dish has not had a business relationship with either company.

**4. Persons Called by Paramount Media Group**.

The last group in the proposed class is comprised of some 333,965 calls attributed to Dish dealer Paramount Media Group.[6]  Paramount Media Group hired a California company called Europe Media International or "EMI," which in turn obtained telephone sales leads from a Florida sales-lead generator Robert Tantalo.  EMI used the Dynamic Interactive calling platform to make the calls.  The calls were placed between February 7 and 11 and between February 14 and 17, 2011.

Setting aside the fact that Mr. Donaca was not one of the people called by either Paramount Media Group or EMI, I will assume, without necessarily deciding, that he has satisfied the four subparts of Rule 23(a) as to this group.  The subpart of Rule 23(b) that plaintiff invokes is Rule 23(b)(3).  In order to satisfy Rule 23(b)(3), however, he must establish that common questions of fact or law "predominate" over individual questions.[7]  I am not convinced.

A prerecorded call does not violate the TCPA if was made with the express consent of the called party.  47 U.S.C. § 227(b)(1)(B).  The parties here agree that consent is an affirmative defenses as to which Dish bears the burden of proof.  However, "an affirmative defense is not *per se* irrelevant to the predominance inquiry."  *Gene & Gene LLC v. BioPay LLC,* 541 F.3d 318, 327 (5th Cir. 2008) (reversing the certification of a class in a TCPA fax case).  Rather, "predominance of individual issues necessary to decide an affirmative defense may preclude class certification."  *Id.* (citation omitted).  The *Gene & Gene* court found that, on the facts of

---

[6] Dish indicates that Paramount Media Group was a "distributer retailer," which is a step removed from what Dish calls an independent retailer.

[7] The rule states that matters pertinent to the issues of predominance and superiority include "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  *Id.*

that case at least, "the issue of consent will entirely determine how the proposed class-action trial will be conducted on the merits." *Id.*

Mr. Donaca argues the mere possibility of consent should not be sufficient to defeat class certification. I agree. *See, e.g., Landsman & Funk PC v. Skinder-Strauss Associates,* 640 F.3d 72, 94-95 (3rd Cir. 2011); *Green v. Service Master on Location Services, Corp.,* No. 07 C 4705, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009). However, Dish has produced evidence that arguably establishes that every person in the group called by EMI for Paramount Media Group did expressly consent to receive the calls. Christopher Lopez, a principal of EMI, confirmed in a deposition that the list of numbers EMI called was obtained from Mr. Tantalo. He further testified that every number received from Mr. Tantalo was the number of an individual who had given express consent to be called. Lopez depo., June 4, 2013 [ECF No. 238-12], at 45-49. *See also* Lopez depo., April 30, 2013 [ECF No. 238-13], at 35-36.

By way of further explanation, a resort property would sponsor a promotion whereby if an individual or couple would agree to attend a 90-minute sales presentation and tour the property, they would qualify for free nights at a vacation destination. An affidavit of Mr. Tantalo, attaching an example of the form he used to sign people up for the presentation and the free nights, was admitted as hearing exhibit B. The form offers a "2-Night FREE Vacation in Orlando or Daytona" in exchange for agreeing in writing to attend the presentation. The sign-up form also includes, albeit in smaller print, a consent to receive prerecorded calls from EMI. Specifically the form includes the following language:

> By signing up for offers with 2Freenites.com and it's [sic] partners, and providing your telephone number, constitutes [sic] your express written consent to receive prerecorded sales messages from (EMI) Europe Media International . . . . You are consenting to receive prerecorded messages only from (EMI), with offers from its affiliated partners, and only at the specific number(s) you have provided to us. Your consent will be effective regardless of whether the number you have

provided: (a) is a home, business, or cell phone line; and/or (b) is or will be registered on any state or federal Do-Not-Call (DNC) list, and shall remain in effect until you revoke consent.  You may cancel your subscription and revoke your consent to receive telephone calls at any time by the opt-out procedure included in any message you receive.  By registering for this promotion and providing your name and personal identifying information, you expressly consent, affirmatively request and agree to be contacted by (EMI) and their affiliates, subsidiaries and partners.  By registering for this promotion and providing your personal information you expressly consent to be contacted by (EMI) or its third party marketing partners through the use of email, direct mail, and/or telephone, including through the use of an automated telephone dialer, in which case a prerecorded message may be left on you [sic] answering machine.

It would not surprise me to learn that at least some of the people who signed up for "two free nights" did not read the smaller print and might not have realized that they were consenting to receive prerecorded calls.  During the hearing I expressed my distaste for this gimmick. Indeed, Dish's counsel attempted to distance Dish from this practice at the hearing, indicating (and there is no evidence to the contrary) that Dish was not aware of the manner in which consents were obtained.  But the point is that in order to determine whether an individual read the form's language and knowingly agreed to accept prerecorded calls in order to qualify for the two free nights (or whether the consent was withdrawn before the date of the call that put him or her into plaintiff's proposed class), one would have to do individualized fact finding.

In his reply [ECF No. 250] plaintiff reports that neither Mr. Lopez nor Mr. Tantalo could produce documentation proving that each of the persons on the Tantalo list executed a written consent.  *Id.* at 26.  But plaintiff offers no evidence indicating that their testimony was false. During oral argument plaintiff's counsel indicated that the records show the specific people who received the calls, but plaintiff has not identified even one of those people who did not execute a written consent.  Plaintiff states that even if the testimony were true, the individuals did not consent to be contacted by Dish.  That misses the point.  No one suggests that Dish called anyone.  The case is about attaching vicarious liability to Dish for the actions of others.

The *Gene & Gene* court acknowledged that there can be situations where a TCPA plaintiff could show on a class-wide basis that consent was not obtained.  541 F.3d at 327-28. For example, one could attempt to invalidate the "two free nights" method of obtaining consent as a matter of law.  But Mr. Donaca has not argued this, nor has he made any other showing that the absence of consent can established here on a class-wide basis.  I reiterate that plaintiff bears the burden of establishing that common issues predominate, and that this Court must take a close look at whether that burden has been met.  *XTO,* 725 F.3d at 1219.  It is not the Court's role to develop an argument for him.

The bottom line is that, on the record before me, I cannot find that questions of fact or law predominate over questions affecting individual members with respect to the Paramount Media Group/EMI portion of the proposed class.

## C.  Superiority.

In the previous two sections of this order on the certification motion I have explained why I do not find that Mr. Donaca is a member of the proposed class and why, even if he is, there are additional problems under Rule 23 as to each of the groups that comprise the proposed class.  I have one additional issue with respect to the proposed class, and it applies regardless of my previous findings and conclusions.

Under Rule 23(b)(3), Mr. Donaca also must establish that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Whether one method of adjudicating a dispute is "superior" to another method depends on one's perspective. But one must remember that a fundamental reason for having class actions is that there are claims that are potentially valid but which are so small in monetary terms that it is inefficient and impractical, if not impossible, to pursue them.  Only if such claims can be collected with other

18

similar claims in a class action do the economics of pursuit make sense.  *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617 (1997).

As plaintiff points out in his reply brief, at least one court has expressed the view that TCPA cases lend themselves to class certification.  *Ira Holtzman C.P.A. v. Turza,* 728 F.3d 682, 684 (7th Cir. 2013) (describing class certification in TCPA fax cases as "normal").  On the other hand, an Illinois state court judge expressed a different view:

> Given the statutory framework of plaintiff's claims, the Court strongly believes that a class action is not an appropriate method for the "fair and efficient" adjudication of the controversy.  As noted above, in enacting the TCPA, Congress expressly struck a balance that was designed to be fair to the recipient and the sender of the fax.  Congress believed that allowing an individual to file an action in small claims court to redress the nuisance of unsolicited faxes and to recover a minimum of $500 in damages was an adequate incentive to address what is, at most, a minor intrusion into an individual's daily life.  Congress added harsher penalties for chronic or willful violators in the form of actions in federal court by the various state attorneys general, in which the potential for [a] substantial award of damages exists.  To engraft on this statutory scheme the possibility of private class actions, with potential recoveries in the millions of dollars, strikes the Court as unfair given the nature of the harm Congress attempted to redress in the TCPA.

*Kim v. Sussman,* 03 CH 07663, 2004 WL 3135348, at *2 (Ill. Cir. Ct. Oct. 19, 2004) (citing Senator Ernest Hollings' testimony when the TCPA was under consideration).

Neither I nor the parties have delved into the legislative history of the TCPA, and I am not prepared to speculate about Congress' intent based on one Senator's comments.  But the facts of this case do not convince me that class treatment is necessarily superior to other methods for a fair and efficient adjudication of TCPA claims.  Mr. Donaca's own example suggests the contrary.  He has been generating something in the range of 60% of his income from suits or threats to sue telemarketers.  Few people will make such claims for an occupation or avocation.  But it does seem to me that if one is sufficiently annoyed by unsolicited prerecorded calls (or live calls), there is a remedy that has actually and successfully been used.

### D. **Conclusion**

I have not ignored evidence developed by Mr. Donaca and his lawyers, through substantial time and effort, that casts a shadow on some of Dish's conduct. I assume that the merits of such criticisms will be addressed in the litigation brought by the United States and four states' Attorneys General in Illinois, and that any appropriate remedies will be imposed. But, having studied the briefs and their exhibits, a rough transcript of the extensive oral argument presented at the hearing, and some of the additional deposition testimony on file, I conclude that the plaintiff has not proven that class certification is appropriate in this case. Accordingly, the motion for class certification is denied.

## III. DEFENDANT'S MOTION TO STRIKE CERTAIN ARGUMENTS AND EXHIBITS IN PLAINTIFF'S REPLY IN SUPPORT OF CLASS CERTIFICATION. [ECF No. 253].

This motion takes plaintiff to task for raising new arguments and presenting theretofore undisclosed evidence for the first time in their reply brief, such as the LA Activations evidence. As indicated, Dish had opportunities, including during the hearing, to respond to the "new" material. In any event, having considered this material, in part to evaluate whether it was indeed new and if it was prejudicial, I have concluded that it made no difference to the outcome of the certification motion. Accordingly, the motion is denied.

### ORDER

1. Dish's motion for summary judgment [ECF No. 172] is GRANTED IN PART AND DENIED IN PART. It is granted as to five of the nine calls in dispute (prerecorded calls two and four, and live calls seven through nine). It is denied as to prerecorded calls one, three, five and six.

2.  Plaintiff's revised motion for class certification [ECF No. 221] is DENIED.

3.  Dish's motion to strike certain arguments in and exhibits to plaintiff's reply in support of his revised motion for class certification [ECF No. 253] is DENIED.

DATED this 18th day of February, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge